IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACK HAUGHT, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | 12 C 2515 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| MOTOROLA MOBILITY, INC., a Delaware corporation, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jack Haught brings this class action suit on behalf of himself and all others similarly situated against Motorola Mobility, Inc. alleging three counts stemming from his purchase of a Motorola CLIQ XT mobile telephone: (1) false and misleading representations in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILSC 505/1 *et seq.* (Count I); (2) common law fraud by omission (Count II); and (3) unjust enrichment (Count III). Motorola moves to dismiss Haught's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Haught has failed to state a claim upon which relief may be granted.  For the foregoing reasons, Motorola's Motion to Dismiss is granted in part and denied in part.

1

**I. Background**

In deciding the instant Motion, the Court assumes the veracity of the well-pleaded facts in the Complaint and construes all reasonable inferences in Haught's favor. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)); *accord Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Motorola is an international manufacturer of cellular telephones with its corporate headquarters and principal place of business in Libertyville, Illinois. On March 17, 2010, Motorola released the CLIQ XT, a mobile phone designed to utilize the Google Android operating system. A mobile phone's operating system allows the user to access and use the phone's primary features and functions. With this in mind, mobile phone manufacturers customarily upgrade operating systems installed on previously sold phones to provide additional features and enhanced functionality. Because third-party mobile application developers frequently update their products to function correctly with the most recent version of a particular operating system, mobile phones using an outdated operating system are often incompatible with popular third-party mobile applications.

Upon its release the CLIQ XT utilized Android version 1.5, a version of the Android operating system released in May 2009. At the time of the CLIQ XT's release

the most current version of the Android operating system was Android version 2.1. That month Motorola included the CLIQ XT on an online upgrade status chart. Motorola indicated on the chart that for the CLIQ XT, "[u]pgrade to Android 2.1 planned for Q2." On the same chart, Motorola listed the upgrade status of other devices as "[u]pgrade under evaluation." On March 30, 2010, in response to customer inquiries regarding the operating system of the CLIQ XT, a Forum Manager of Motorola's online customer support forum highlighted the phone's inclusion on the upgrade status chart. Thereafter, until at least June 17, 2010, Motorola represented that an upgrade of the CLIQ XT to Android version 2.1 was planned for the second quarter of 2010.

On or around June 30, 2010, Jack Haught—a resident of the State of Ohio—purchased a CLIQ XT for approximately $100. Prior to purchasing the phone, Haught viewed Motorola's representations regarding the CLIQ XT's ability to run and store most commonly used mobile applications through its Android operating system. At the time of his purchase Haught was aware that his purchase was subject to a 30-day return and exchange policy. Thereafter, before the end of the 30-day return period, Haught viewed Motorola's online representations of the planned upgrade of the CLIQ XT operating system to Android version 2.1. Relying on these representations, Haught chose not to return his phone prior to the close of the return period.

On June 30, 2010, Motorola stated through its official Twitter account: "Continuing work on an upgrade for CLIQ/CLIQ XT to deliver even better experience and will update on timing when we can." Thereafter, between July 31, 2010, and December 22, 2010, Motorola continued to indicate on both its online customer service forum and its official Twitter account that an upgrade of the CLIQ XT's operating system was forthcoming. Finally, on February 3, 2011, Motorola announced through its online customer service forum that the CLIQ XT would remain on Android version 1.5. As a result, Haught alleges that his phone became outdated and incompatible with many popular mobile applications, thereby allegedly failing to provide most features beyond its basic functionality.

## II. The Standard of Review

When considering a motion to dismiss under Rule 12(b)(6) the Court accepts as true all of the well-plead facts alleged in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth*, 469 F.3d at 619 (citing *Savory*, 469 F.3d at 670); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. When the factual allegations are well-plead the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See Id.* at 679. A claim has facial plausibility when the factual content plead in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678.

Claims alleging fraud must satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis supplied). Rule 9(b) applies both to common law fraud claims and to claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "While [Rule 9(b)] does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx,*

5

*Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)) (internal quotations omitted).

The heightened pleading requirement of Federal Rule of Civil Procedure 9(b) therefore mandates that a complaint alleging fraud contain more substance in order to survive a motion to dismiss than a complaint based on another cause of action governed only by the minimal pleading standards of Rule 8(a)(2). *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (Rule 9(b) forces "the plaintiff to do more than the usual investigation before filing his complaint"); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (the rule serves three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions;" and (3) providing notice of the claim of fraud to the defendants); *accord Iqbal*, 556 U.S. at 678 (a complaint must only state a plausible claim to relief to survive a motion to dismiss under Rule 8).

### III. Discussion

*A.  Count I:  The Illinois Consumer Fraud and Deceptive Business Practices Act*

Motorola argues first that Haught may not bring a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILSC 505/1 *et seq.* (hereafter "ICFA").  Although Motorola argues that Haught lacks standing to bring his ICFA claim, Motorola's argument is actually premised on choice-of-law principles articulated

in *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005). In *Avery*, the Illinois

Supreme Court held that the ICFA does not have extraterritorial effect, and applies to

nonresident claimants only when the circumstances of the disputed transaction

occurred "primarily and substantially" in Illinois. *Id.* at 854.

Whether a putative nonresident plaintiff may bring an ICFA claim is not

governed by a bright-line rule but rather requires a highly fact-bound inquiry in which

no single factor is dispositive. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th

Cir. 2009). In particular, the Illinois Supreme Court has considered: (1) the claimant's

residence; (2) the defendant's place of business; (3) the location of the relevant item that

is the subject of the disputed transaction; (4) the location of the claimant's contacts with

the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of

law provisions, if there are any; (7) where the allegedly deceptive statements were

made; (8) where payments for services were to be sent; and (9) where complaints about

the goods or services were to be directed. *See The Clearing Corp. v. Fin. and Energy Exch.*

*Ltd.*, No. 09 C 5383, 2010 WL 2836717, *6 (N.D. Ill. July 16, 2010) (citing *Avery*, 835

N.E.2d at 854-855).

In applying this test, it is instructive to look both to *Avery* as well as the Seventh

Circuit's decision in *Crichton*, 576 F.3d 392. In *Avery*, 835 NE.2d at 810-811, the

nonresident claimants alleged that their Illinois-based automobile insurer fraudulently

supplied substitute parts on insured repairs performed outside of the state. Similarly, in *Crichton*, 576 F.3d at 394, 397, the nonresident claimant brought an ICFA claim against an Illinois-based insurance company despite the fact that he received promotional insurance materials, entered into and renewed his insurance, submitted claims, and was allegedly deceived outside of Illinois. In each of these cases, the courts emphasized the plaintiff's place of residence and the tenuous connection between the respective transactions and the State of Illinois to conclude that the putative plaintiffs were unable to bring ICFA claims. *See Avery*, 835 N.E.2d at 855; *Crichton*, 576 F.3d at 397.

Haught seeks to distinguish the instant case by emphasizing that the alleged misrepresentations were designed in Illinois and disseminated on a website registered and hosted in Illinois. Further, Haught notes that the terms of an agreement relating to his use of online Motorola services provides for the resolution of disputes under Illinois law. Taken together, however, the factors articulated in *Avery* advise against extending ICFA protection to Haught's transaction with Motorola.

Haught is a resident of the State of Ohio who purchased his phone from a third-party vendor outside of the State of Illinois. Although Motorola is headquartered in Illinois, this alone does not confer nonresident standing under the ICFA. *See Crichton*, 576 F.3d at 396 (the location of the defendant's business in Illinois is not dispositive of a

8

nonresident claimant's standing to sue under the ICFA). Nor does Haught's allegation that Motorola designed its allegedly deceptive scheme in Illinois confer standing under the Act. *See Avery*, 835 N.E.2d at 855 (that a scheme to defraud "disseminated" from the defendant's headquarters in Illinois is insufficient to confer nonresident standing to sue under the ICFA) (citing *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 & n.10 (N.D. Ill. 1997) (where the only connection with Illinois is the headquarters of the defendant or the fact that the scheme "emanated" from Illinois, the ICFA does not apply to nonresident claimants)). Further, though Haught alleges that Motorola's misrepresentations emanated from servers located in Illinois, he has made no allegations that he viewed these representations within the State.

Although there is an Illinois choice-of-law provision included in the terms of service agreement between Motorola and Haught regarding Haught's mobile services account, this is not dispositive of the effect of the ICFA on nonresident claimants. As noted above, the Court may consider a choice-of-law provision included in a contract between the putative plaintiff and defendant in determining whether a nonresident claimant may bring a cause of action under the ICFA in Illinois. However, because an ICFA claim cannot rely solely on a breach of contract claim, a choice-of-law provision is not dispositive of a claimant's right to sue under the ICFA. *See Morrison v. YTB International, Inc.*, 649 F.3d 533, 537 (7th Cir. 2011) ("*Avery* holds that a choice-of-law

clause is not dispositive, because a claim under the Consumer Fraud Act is independent of the contract"); *see also Shaw v. Hyatt International Corp.*, No. 05 C 022, 2005 WL 3088438, at *3 (N.D. Ill. Nov.15, 2005) (where choice-of-law provision on defendant's website specified Illinois law, the existence of such a clause has no impact on whether the ICFA applies in the first instance because the extraterritorial application of the ICFA is limited to deceptive trade practices occurring "primarily and substantially within Illinois" and the fact that "Illinois law was selected to govern disputes arising out of the defendant's website does nothing to further the contention that the allegedly deceptive practices occurred in Illinois."); *Int'l Profit Associates, Inc. v. Linus Alarm Corp.*, 2012 IL App (2d) 110958, 2012 WL 2366404, at *7 (Ill. App. Ct. June 20, 2012) ("Particularly in a situation such as this one, where an action under the Act must be based *outside of contract*, it does not make sense to have a *contractual* choice-of-law provision *automatically* prevail over a statutory territorial limitation.") (emphasis in original). Here, although Haught alleges that he accessed Motorola's status upgrade chart by means of his MOTOBLUR account, the terms of service agreement relate only indirectly to the transaction at issue in his ICFA claim—that is, his purchase of a mobile phone in Ohio.

In sum, the nature of the transaction at issue here is substantially similar to the transaction addressed in *Crichton*. There, as here, the nonresident claimant sought

recovery under the ICFA on the basis of allegedly fraudulent representations that were devised in Illinois and received outside of the State. *See Crichton,* 576 F.3d at 394, 397. Likewise, in this case and in *Crichton,* both the transactions at issue and the alleged injury therefrom occurred outside of Illinois. *See Id.* Although the choice-of-law provisions included in Haught's mobile services agreement are a "mark in [his] favor," *Morrison,* 649 F.3d at 537 (citing *Martin v. Heinold Commodities, Inc.,* 510 N.E.2d 840, 847 (Ill. 1987)), the principal transaction upon which his complaint rests is his purchase of a mobile phone in Ohio. As Haught has failed to allege that the conduct at issue here occurred "primarily and substantially" in Illinois, he has failed to state a claim under the ICFA upon which relief may be granted. *See Avery,* 835 NE.2d at 854. Therefore Count I of Haught's Complaint, alleging a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act, is dismissed.

*B. Count II: Common Law Fraud*

Motorola further argues that Haught has failed to state a colorable claim of common law fraud in Count II of his Complaint. In order to prevail on such a claim in Illinois a plaintiff must prove: (1) a false statement or omission of a material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent to induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement;

and (5) damages to the plaintiff resulting from his reliance on the statement. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

Although Haught describes his claim as fraud by omission, his Complaint relies primarily on Motorola's alleged misrepresentations regarding its ability and intention to upgrade the CLIQ XT. In short, Haught alleges that Motorola's official statements created the false impression that an upgrade for the CLIQ XT was imminent, while in fact the company was either unable or unwilling to upgrade the phone. Haught alleges that he justifiably relied on these affirmative representations in choosing not to return his phone prior to the close of the 30-day return period, which expired on July 31, 2010. While Haught described his claim against Motorola as fraud by omission, his real cause of action that he has plead against Motorola, taking all of the allegations in the Complaint as true and construing all reasonable inferences in Haught's favor, is for actionable common law promissory fraud that is part of a larger scheme or device to defraud.

Haught argues that Motorola's alleged representations that induced him to retain his phone constituted statements of then-existing material facts. However, the company's statements prior to July 31, 2010, the date on which the 30-day return period closed, are better understood as statements of future intentions. In Illinois, statements of future intention cannot generally form the basis for an action for fraud because

alleged misrepresentations must be statements of present or preexisting facts and not statements of future intent or conduct. *See, e.g., LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 960 (N.D. Ill. 2006) (citing *AAR Int'l Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 798-799 (N.D. Ill. 2002) (in Illinois, misrepresentations of intent to perform future conduct is not actionable absent a showing that the fraud is part of a scheme to defraud); *Sommer v. United Savings Life Ins. Co.*, 471 N.E.2d 606, 611 (Ill. App. Ct. 1984) ("Illinois law is clear that a misrepresentation as to a future promise or intent will not sustain an action for fraud.")).  Thus, under Illinois law there is a general prohibition against claims for promissory fraud, lest every claim for breach of contract also sounds in tort. *See Bower v. Jones*, 978 F.2d 1004, 1012 ("If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. Presumably, it is this result that the Illinois rule [against claims of promissory fraud] seeks to avoid."); *see, e.g., Bensdorf & Johnson, Inc. v. Northern Telecom Ltd.*, 58 F. Supp. 2d 874, 881 (N.D. Ill. 1999) ("The Illinois cases make it clear that the bar against claims for promissory fraud is at least in part aimed at preventing every contract case from becoming a claim for fraud as well.").

Generally promissory fraud, based on future acts, is not actionable in Illinois unless the fraud falls into the exception to the rule whereby it is part of a scheme or

device to defraud. *See, e.g., LeDonne*, 411 F. Supp. 2d at 960-961 (citing *Wachovia Secs. LLC v. Neuhauser*, No. 04 C 3082, 2004 WL 2526390, at *9-*10 (N.D. Ill. Nov. 5, 2004) (making false statements in SEC filings, promising to engage in only legal transactions while intending to violate securities laws, and misusing margin accounts sufficiently fell within the exception to the rule); *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *1-*5, *19 (N.D. Ill. April 28, 2003) (inducing elderly plaintiff to take out two mortgages to remodel her home, forging her signature on documents, and doing minimal work while pocketing $75,000 is sufficient to fall within the exception to the rule); *AAR Int'l Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 798-799 (N.D. Ill. 2002) (a series of misrepresentations designed to induce a party to enter into a contract is sufficient to fall within the exception to the rule); *Asad v. Hartford Life Insurance Company*, 116 F. Supp. 2d 960, 964 (N.D. Ill. 2000) (insurance company's nationwide scheme to maintain or increase insurance premium income by encouraging its agents to engage in fraudulent sales practices falls within the exception); *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 683 (Ill. 1989) (numerous knowingly false promises regarding the defendant's ability and intent to pay debts is sufficient to fall within the exception)); *Sommer*, 471 N.E.2d at 611 (insurance company's misrepresentations regarding material facts about coverage and policy were sufficient to fall within the exception) (citing *Steinberg v. Chicago Medical School*, 371 N.E.2d 634

14

(Ill. 1977)); *Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1362 (Ill. App. Ct. 1993) (representation that plaintiff would supervise presentation of training program through a certain time was part of a scheme to induce him to leave his prior position, accept the defendant's job, develop the programs, and then replace him with a less expensive employee where statement was made with the present intention of not carrying it out and thus sufficient to fall within the exception); *Pepper v. Marks*, 522 N.E.2d 688, 691 (Ill. App. Ct. 1988) (scheme to defraud exception existed when real estate developer told prospective purchaser of unit that it had no plans to auction any of its unsold lots despite the fact that the defendant had entered into a contract with a real estate auctioneer to auction unsold units).

It is true that Motorola provided less definite declarations regarding proposed upgrades to other phones (e.g., "Upgrade under evaluation"). Nonetheless, Motorola's statements prior to June 17, 2010, indicate that the company "planned" to provide an upgrade of the phone's operating system prior to the conclusion of the second quarter of 2010. Similarly, Motorola's June 30, 2010, suggestion that it would provide further updates regarding its efforts to provide an upgrade is a statement of future intentions. Although Motorola's June 30, 2010, statement that the company was "[c]ontinuing work on an upgrade for CLIQ/CLIQ XT" more closely resembles a statement of present fact, Haught does not allege that Motorola was not working to provide an upgrade as of that

15

date. Because each of the allegedly fraudulent statements attributed to Motorola that Haught alleges induced him to retain his phone concerned Motorola's future intentions, Haught's claim must rely on a theory of promissory fraud. *See, e.g., LeDonne*, 411 F. Supp. 2d at 960; *Bradley Real Estate Trust*, 640 N.E.2d at 13.

Under Illinois law, a promise to perform an act in the future—even if made by a party who does not intend to perform—is not actionable fraud, unless the false promise is part of a larger scheme or device to defraud another of their property—in which case the plaintiff can rely on a theory of promissory fraud. *See Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 826 N.E.2d 970, 977 (Ill. App. Ct. 2005); *see also Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (a "statement which . . . relates to future or contingent events, expectations or probabilities . . . ordinarily does not constitute an actionable misrepresentation.") (internal citations omitted). To survive a motion to dismiss, a claimant relying on a theory of promissory fraud must therefore aver specific, objective manifestations of fraudulent intent—of a scheme or device to defraud. *See, e.g., RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*, No. 11 C 02071, 2012 WL 401490, *11 (N.D. Ill. Feb. 7, 2012) (quoting *Bower*, 978 F.2d at 1011). If the plaintiff cannot meet this burden, it is presumed that he cannot prove facts at trial entitling him to relief. *See Id.*

16

Objective manifestations of a fraudulent scheme or device are evident where the defendant's conduct is "particularly egregious" or an element of a "larger pattern of deceptions or enticements that reasonably induces reliance." *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Thus, to make out an actionable promissory fraud claim, Haught must allege that Motorola's statements before July 31, 2010—the date on which the return period expired—were particularly egregious or a part of a larger pattern of deceptions propagated by Motorola that reasonably induced Haught to purchase and retain his phone.

To meet this burden, Haught points to statements made by Motorola prior to July 31, 2010, as well as statements made after that date, allegedly evidencing an ongoing effort to mislead consumers regarding the company's intention or ability to upgrade the CLIQ XT. "A series of unfulfilled promises is better (though of course not conclusive) evidence of fraud than a single unfulfilled promise." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999). Here, Haught alleges a specific series of representations made by Motorola that could plausibly be seen to entice consumers to purchase a CLIQ XT and that the company subsequently failed to fulfill. Thus, although it is far from certain that Haught will be able to prove the existence of an ongoing scheme or device to defraud CLIQ XT customers on summary judgment or at trial, Haught has properly alleged such a scheme or device at this stage of the

17

proceedings, when the duty of this Court is merely to test the sufficiency of the pleadings and construe all reasonable inferences in favor of the nonmoving party. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989)) (internal quotations omitted).

Likewise, Haught has sufficiently alleged that he reasonably relied on Motorola's statements prior to July 31, 2010, in choosing to retain his phone. The question of a plaintiff's reliance is generally a question of fact, and becomes a question for the Court only where it is apparent from the undisputed facts that only one conclusion can be drawn. *See Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 229 (Ill. App. Ct. 2007). Here, as of July 1, 2012, Motorola's stated intention to upgrade the CLIQ XT by June 30, 2010 had clearly failed to come to fruition. However, Haught alleges that on the day that he purchased his phone, Motorola indicated that it was "[c]ontinuing work on an upgrade for CLIQ/CLIQ XT to deliver even better experience." Based on these representations, and Haught's allegation that a reasonable consumer would expect such an upgrade, Haught alleges that he reasonably believed his phone would, without question, be upgraded, and that the only remaining issue was when exactly that upgrade would occur. Although the fact that Motorola had already failed to meet its expected upgrade schedule perhaps should have counseled against Haught relying on the company's assurances, Motorola's statement that it was

18

continuing work on an upgrade could plausibly be understood to constitute an affirmative assurance that such an upgrade would inevitably follow. Thus, accepting all of Haught's allegations as true and construing all reasonable inference in his favor, the Court can plausibly draw the reasonable inference that Haught relied on Motorola's statements and the Court cannot say that he has failed to present a plausible claim of promissory fraud based on a scheme or device to defraud that gives rise to an entitlement to relief.

Nonetheless, Motorola argues that Haught's fraud claim must be dismissed because he has failed to allege an injury resulting from Motorola's assurances regarding the CLIQ XT. Under Illinois Law, claims of fraudulent misrepresentation are governed by the benefit-of-the-bargain rule, with damages determined by assessing the difference between the actual value of the product sold and the value that the product would have had at the time of the sale if the representations had been true. *See Smith, Allen, Mendenhall, Emons & Selby v. Thomson Corp.*, 862 N.E.2d 1006, 1009 (Ill. App. Ct. 2006) (citing *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 537-38 (Ill. 1989)). At the pleading stage, the plaintiff must allege actual damages, and may only recover out-of pocket losses where the parties lack privity, as Haught and Motorola do in connection with the sale of Haught's phone. *See Swanson v. Citibank, N.A.*, 614 F.3d 400,

406 (7th Cir. 2010) (citing *Roboserve, Inc. v. Kato Kagaku Co.*, Ltd., 78 F.3d 266, 274 (7th Cir. 1996) (applying Illinois law)).

Here, Haught alleges that he would have returned his CLIQ XT had he known that it would become outdated and incompatible with many popular mobile applications. Further, he alleges that he and similarly situated consumers would have refused to purchase a CLIQ XT, or demanded to pay less for the phone, if not for Motorola's alleged misrepresentations. As such, Haught alleges damages equivalent to the purchase price of the CLIQ XT, as well diminution in value of the CLIQ XT utilizing Android 2.1 as opposed to Android 1.5. Although it is unclear whether Haught will be able to prove the diminution in value between the phone that he received and a CLIQ XT utilizing Android 2.1, he has properly plead damages resulting from Motorola's alleged misrepresentations. For this reason, Haught has stated a claim of common law promissory fraud based on a scheme or device to defraud upon which relief may be granted. At this stage of the proceedings, Haught has sufficiently alleged a plausible entitlement to relief and the Court can draw a reasonable inference that Motorola is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678.

*C. Count III: Unjust Enrichment Claim*

Under Illinois law unjust enrichment is not a separate cause of action. *See Pirelli*, 631 F.3d at 477 (quoting *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971,

977 (Ill. App. Ct. 1995)). Unjust enrichment is a condition that may arise from unlawful or improper conduct as defined by positive law, such as fraud, undue influence, or duress, and may be redressed by a cause of action based upon that improper conduct. *See Id*. "Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Association Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (emphasis in original) (citing *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996)). Because the Court concludes that Haught has sifficiently alleged a claim of promissory fraud that is plausible on its face, Motorola's Motion to Dismiss is also denied with respect to Haught's claim of unjust enrichment. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). Here the unjust enrichment claim relies on Haught's common law fraud claim, so it is therefore tied to that claim and Haught will be able to recover for unjust enrichment depending on whether he is able to successfully recover on his claim for common law fraud. *See Cleary*, 656 F.3d at 517; *Association Ben. Services*, 493 F.3d at 855.

## IV. Conclusion

Because Haught has failed to demonstrate that his purchase of a Motorola CLIQ XT mobile phone and the subsequent conduct by Motorola occurred "primarily or substantially" in Illinois, he is unable to bring a claim as a nonresident claimant under the ICFA. However, because Haught alleges that he reasonably relied on Motorola's misrepresentations of future conduct regarding the proposed upgrade of his mobile phone's operating system in deciding not to return his phone, he has properly stated claims of promissory fraud and unjust enrichment based on a scheme or device to defraud that are plausible on their face. For these reasons, Motorola's Motion to Dismiss Haught's Complaint is granted with respect to Count I and denied with respect to Counts II and III.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 23, 2012