**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

JACK HAUGHT, individually and on behalf
of all others similarly situated,

            *Plaintiff*,

            *v.*

MOTOROLA MOBILITY, INC., a Delaware
corporation,

            *Defendant.*

Case No. 1:12-cv-02515

Hon. Virginia M. Kendall

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. THE UNDERLYING FACTS AND LAW ................................................................2

    A.    Nature of the Case ..........................................................................................2

    B.    The Litigation and Work Performed to Benefit the Class ...........................4

    C.    Ongoing Settlement Negotiations and the Assistance of Magistrate Judge
        Young B. Kim ...............................................................................................5

    D.    The Settlement Agreement ............................................................................6

III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS'
     FEE AWARD .............................................................................................................7

    A.    The Lodestar Method is Applied to Determine the Reasonableness of the
        Requested Attorneys' Fee Award .................................................................7

    B.    The Requested Attorneys' Fee Award is Reasonable in Light of the
        Factors Considered in Assessing Such Awards ..........................................11

IV. THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE
     AWARD ...................................................................................................................14

V. CONCLUSION ........................................................................................................15

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................7, 9, 11

**United States Circuit Court of Appeals Cases:**

*Gonzalez v. S. Wine & Spirits of Am., Inc.*, 555 F. App'x 704 (9th Cir. 2014) .............................9

*In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4 (1st Cir. 2012).........................9

*Jackman v. WMAC Inv. Corp.*, 809 F.2d 377 (7th Cir. 1987) .........................................................9

*Redman v. RadioShack Corp.*,
— F.3d —, No. 14-1470, 2014 WL 4654477 (7th Cir. Sept. 19, 2014)...........................8

**United States District Court Cases:**

*De La Riva v. Houlihan Smith & Co.*,
10-cv-8206, 2013 WL 5348323 (N.D. Ill. Sept. 24, 2013)................................................11

*In re Sw. Airlines Voucher Litig.*,
No. 11-cv-8176, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) ..............................................8

*In re Trans Union Corp. Privacy Litig.*,
MDL 1350, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ...................................................12

*Kulesa v. PC Cleaner, Inc.*, No. 12-cv-00725 (C.D. Cal. Aug. 26, 2014)....................................13

*Theis v. AVG Technologies USA*, Inc., 1:12-cv-10920-RGS (D. Mass. May 5, 2014).................13

*Wood v. Motorola Mobility, Inc.*, No. 4:11-cv-04409 (N.D. Cal.) ...................................................4

**State Court Cases:**

*Atanasov v. GoLive! Mobile, LLC, et al.*,
No. 2013-CH-08460 (Cir. Ct. Cook Cnty. Feb. 18, 2014) ................................................13

*Coy v. CCN Managed Care, Inc.*, 2011 IL App (5th) 100068-U (Aug. 23, 2011).......................14

*GMAC Mortg. Corp. of Pa. v. Stapleton*, 603 N.E.2d 767 (Ill. App. Ct. 1992) ..........................14

*Kaiser v. MEPC Am. Props., Inc*., 518 N.E.2d 424 (Ill. App. Ct. 1987) ..................................9, 11

*LaHood v. Couri*, 603 N.E.2d 1165 (Ill. App. Ct. 1992) .................................................................9

*Langendorf v. Irving Trust Co.*, 614 N.E.2d 23 (Ill. App. Ct. 1992) .............................................14

*Mt. Vernon Mem'l Estates, Inc. v. Wood*, 410 N.E.2d 995 (Ill. App. Ct. 1980).......................9-10

*Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 929 N.E.2d 641 (Ill. App. Ct. 2010) ....................9

*Ryan v. City of Chicago*, 654 N.E.2d 483 (Ill. App. Ct. 1995).....................................................15

*Watson v. S. Shore Nursing & Rehab. Ctr., LLC*, 965 N.E.2d 1200 (Ill. App. Ct. 2012) .........9, 11

*Woodman v. ADP Dealer Servs., et al.*,
    No. 2013 CH 10169 (Cir. Ct. Cook Cnty., Ill. Nov. 4, 2013)...........................................13

**Rules:**

28 U.S.C. § 1712 ......................................................................................................................8

Fed. R. Civ. P. 23 .....................................................................................................................7

**Miscellaneous Authority:**

Accessories, Motorola, http://www.motorola.com/us/shop-all-accessories-category/
    (last visited Sept. 30, 2014)............................................................................................8 n.4

Clearance*,* Motorola http://www.motorola.com/us/shop-all-clearance/
    (last visited Sept. 30, 2014)............................................................................................8 n.4

S. Rep. 109-14 (2005) ..............................................................................................................8

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs:*
    *An Empirical Study*, 53 UCLA L. Rev. 1303 (2006).......................................................15

## I.    INTRODUCTION

More than three years have passed since Plaintiff Jack Haught ("Plaintiff") first sought redress for Defendant Motorola Mobility, Inc.'s ("Motorola" or "Defendant") alleged misrepresentations regarding an update to its CLIQ XT mobile device. In that time, Class Counsel have litigated two separate actions, briefed several substantive motions, participated in both formal and informal discovery, and engaged in months of extensive settlement negotiations—including those relating to the amount of a reasonable attorneys' fee award—under the guidance of Magistrate Judge Young B. Kim. Similarly, Haught has been an active participant in the litigation every step of the way, assisting Class Counsel in the investigation of his claims and providing the information necessary to pursue them on behalf of himself and the Class. The fruit of Haught's and Class Counsel's labor is the Settlement Agreement ("Settlement," "Agreement," or "Settlement Agreement") that this Court preliminarily approved on July 3, 2014, which fully resolves Haught's and the Class's claims against Motorola in this case.

As explained in the memorandum supporting Haught's motion for preliminary approval, the Agreement is an exceptional result for the Class, providing a combination of voucher-based and prospective relief that will both compensate Class Members and guard against the possibility of Motorola making similar representations about product updates in the future. In particular, Class Members are entitled to receive fully transferrable $25 redemption codes that can be used to purchase products and accessories at the Motorola Online Store. In addition, Motorola has agreed to improve its communications with consumers regarding mobile device updates, thus keeping consumers better informed as to if and when updates will be released.

With the relief secured for the Class—and the efforts expended to do so—as the

1

backdrop, Haught now moves the Court to approve an attorneys' fee award to Class Counsel in the amount of $350,000 and an incentive award of $2,000 to himself as Class Representative, which the Parties negotiated under the guidance of Magistrate Judge Kim. The requested attorneys' fee award is more than reasonable given the results achieved for the Class and Class Counsel's base lodestar of $360,199.50, which is greater than the requested fee award. Moreover, the fact that (i) the award was negotiated by the Parties with the assistance of Magistrate Judge Kim—and only after he had reviewed Class Counsel's attorney time records,[1] and (ii) that it is on par with or less than awards in other similar consumer class actions, further supports its reasonableness in this context.

Similarly, in light of his substantial contributions to the litigation and ultimate resolution of this matter to the benefit of the Class, Haught's request for a modest incentive award of $2,000 is reasonable and should be approved by the Court as well. Indeed, without his efforts, it is unlikely that the Settlement could have been achieved in the first instance.

For these reasons and as discussed further below, Plaintiff Haught respectfully requests that, following the Final Fairness hearing, the Court enter an order granting the instant motion and approving the negotiated attorneys' fee and incentive awards.

## II.    THE UNDERLYING FACTS AND LAW

In order to place the requested fee award in context, a brief summary of the underlying facts and law follows.

### A.    Nature of the Case

Motorola is an international manufacturer of cellular telephones and other mobile

---

[1]     To be clear, Magistrate Judge Kim reviewed Class Counsel's detailed attorney-time records reflecting the attorney and staff time expended at that time. Since then, Class Counsel have expended

technology that thousands of consumers rely on to stay connected. (Dkt. 1 ¶ 8.)[2] In early 2010, Motorola released the "CLIQ XT," which quickly became one of its most popular mobile devices. (*Id.* ¶ 9.) Although the CLIQ XT ran on the Android operating system, which was a major draw for many consumers (*id.* ¶¶ 10–11), the device was allegedly packaged with a version of the operating system that was already more than a year old. (*Id.* ¶ 15.) Indeed, while most mobile consumers were running version 2.1 of Android in early 2010, CLIQ XT users allegedly had no choice but to run version 1.5. (*Id.* ¶ 16.) As a result, Haught alleges, CLIQ XT users were unable to access many mobile applications—including major navigation, banking, weather, news, and social media apps—that the outdated operating system could not support. (*Id.* ¶¶ 18, 44.)

In early spring of 2010, Motorola announced that it would release an upgrade to the operating system—to Android 2.1—by summer. (Dkt. 1 ¶¶ 21, 23.) But summer 2010 came and went, along with many more alleged representations that an upgrade to Android 2.1 was on its way. (*Id.* ¶¶ 29–36.) The upgrade was never released, however. In February 2011—almost a year after the CLIQ XT's release—Motorola announced that the device would "remain on Android 1.5." (*Id.* ¶ 37.)

Plaintiff Jack Haught purchased a CLIQ XT in June of 2010. (Dkt. 1 ¶ 35.) He alleges that, like other consumers, he relied on Motorola's promises that an upgrade to Android 2.1 was forthcoming when he decided to purchase his CLIQ XT. (*Id.* ¶¶ 38–39.) According to Haught, Motorola knowingly misrepresented that the operating system would be upgraded to induce consumers into purchasing and continuing to use the CLIQ XT, and in so doing violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), committed common

---

[2]     Unless otherwise noted, all docket citations refer to the Action before this Court.

law fraud, and was unjustly enriched. (*Id.* ¶¶ 54–96.)[3]

**B.    The Litigation and Work Performed to Benefit the Class**

Class Counsel launched their initial investigation into Haught's claims more than three years ago. Since then, the Parties have engaged in extensive litigation, including significant motion practice and discovery, as well as exhaustive settlement negotiations conducted at arm's length, including with the assistance of Magistrate Judge Young B. Kim.

Class Counsel first began investigating complaints relating to the CLIQ XT in 2010 as consumer frustration built over Motorola's alleged failure to update the device's operating system. (Declaration of Benjamin H. Richman ("Richman Decl.") ¶ 3, a true and accurate copy of which is attached hereto as Exhibit 2.) In September 2011, Plaintiff Haught (along with another named plaintiff, Elyse Wood) filed suit against Motorola in the United States District Court for the Northern District of California, alleging violations of California consumer protection statutes in addition to several common law claims. *See Wood v. Motorola Mobility, Inc.*, No. 4:11-cv-04409 (N.D. Cal.) ("the California Action"). Motorola moved to dismiss the California Action in its entirety, which Plaintiff Haught and Ms. Wood contested. (*Wood*, Dkts. 14, 25, 26.) Ultimately, the court dismissed the California Action without prejudice, however. (*Wood*, Dkt. 33.)

With California no longer a proper venue, Haught subsequently filed the instant Action in this Court on April 5, 2012, alleging claims against Motorola for violations of the ICFA as well as common law fraud and unjust enrichment. (Dkt. 1.) The Court's subject matter jurisdiction was based on the Class Action Fairness Act ("CAFA"), which authorizes federal jurisdiction

---

[3]    Some of the underlying facts regarding Motorola's conduct with respect to its sale and marketing of the CLIQ XT and operating system upgrades are disputed. (*See, e.g.*, Dkt. 29.) To the extent any such underlying facts are disputed, the facts provided here are those that Haught alleges in his operative Complaint. (Dkt. 1.)

over class actions when there is only minimal diversity between class members and a defendant, and the amount in controversy exceeds $5,000,000. (Dkt. 1 ¶ 6.) Again, Motorola moved to dismiss Haught's claims in their entirety. And again, Haught opposed the requested dismissal. (Dkts. 15, 16, 23, 24.) Ultimately, the Court dismissed Haught's ICFA claim, but allowed his Illinois common law claims to proceed. (Dkt. 26.)

On September 17, 2012, Motorola filed its answer to Haught's complaint, denying the substance of his allegations and raising numerous affirmative defenses. (Dkt. 29.) Formal discovery ensued, and the Parties served and responded to one another's written discovery requests. Soon after, the Parties began to discuss the possibility of settlement. Productive discussions gave way to their joint motion to stay proceedings (Dkt. 30), which this Court granted on December 21, 2012. (Dkt. 32.)

### C. Ongoing Settlement Negotiations and the Assistance of Magistrate Judge Young B. Kim

The stay of proceedings marked the beginning of a period of extensive settlement negotiations that would span almost an entire year. Early discussions failed to produce a complete agreement on the relief to the Class, prompting the Parties to seek the Court's assistance with respect to several key issues—chief among them, the method for Class Members to submit claims and the requirements for them to do so. (Richman Decl. ¶ 8.) On March 15, 2013, settlement proceedings were referred to Magistrate Judge Young B. Kim (Dkt. 37), who would play an instrumental role in helping the Parties agree to the Settlement itself and later, the amount of reasonable attorneys' fees and an incentive award that Motorola would pay to Haught and Class Counsel. (Richman Decl. ¶¶ 10–13.)

On March 22, 2013, the Parties began discussions with Judge Kim. (Richman Decl. ¶ 10.) With his assistance over the next several months, the Parties were able to reach agreement

on the claims process—which included subpoenaing additional records of the purchasers of CLIQ XT devices from third-party T-Mobile USA, Inc. ("T-Mobile")—and by late September 2013, had obtained the necessary information to proceed with further settlement negotiations. (*Id.*; Dkt. 63.)

Under Judge Kim's oversight, the Parties focused their attention on the negotiation of a reasonable incentive award to Haught as Class Representative and an award of reasonable attorneys' fees and costs to Class Counsel. (Richman Decl. ¶ 11.) As a part of those discussions, Class Counsel provided Judge Kim and Motorola detailed records of the attorney and staff time supporting their "lodestar" in investigating and prosecuting the claims at issue. (*Id.* ¶ 12.) Based on this information, the Parties exchanged a series of offers and counteroffers as to the appropriate amount of an incentive award and attorneys' fees. (*Id.*.) Judge Kim was deeply involved in this process, going over Class Counsel's time records "line by line," and making several substantive inquiries regarding the records along the way. (*Id.* ¶ 13.) By mid-November, the Parties finally agreed to an incentive award in the amount of $2,000 to Haught as Class Representative and an attorneys' fee award of $350,000 to Class Counsel. (*Id.* ¶ 14.) After resolving these remaining issues, the Parties turned to finalizing the Settlement Agreement— which took several additional months—that this Court preliminarily approved on July 3, 2014. (Dkt. 77.) (A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit 1.)

### D. The Settlement Agreement

The result of the exhaustive negotiations detailed above is a settlement that offers substantial relief to consumers who purchased the CLIQ XT. Under the terms of the Agreement, each Class Member will receive a redemption code worth $25 that they can spend at the

Motorola Online Store, where they can shop for a variety of products ranging from new mobile devices to cell-phone accessories that will be completely covered by the $25 value of the redemption code. (Agreement § 2.1.) In addition, Motorola has also agreed to provide significant prospective relief by improving the way it communicates information regarding software updates to consumers. (*See id.* § 2.2.) A prominent disclaimer on future webpages will ensure that consumers are clearly informed as to if and when they can expect an update to their mobile device's operating system. (*Id.*)

To realize these benefits, Class Counsel spent more than eight hundred hours prosecuting the claims at issue and negotiating the terms of the Settlement, without compensation. (Richman Decl. ¶ 17.) Within this timeframe, Class Counsel countered two motions to dismiss, engaged in discovery, obtained information crucial to determining class membership, and—with Judge Kim's guidance—worked with Motorola to reach the Agreement.

## III. THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEYS' FEE AWARD.

### A. The Lodestar Method is Applied to Determine the Reasonableness of the Requested Attorneys' Fee Award.

Under Federal Rule of Civil Procedure 23, "the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, although Defendant has agreed to pay up to $350,000 in attorneys' fees, (Agreement §§ 8.1–8.2), the Court must nonetheless approve any award of fees in a class action. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983) (noting that "[i]t remains for the district court to determine what fee is 'reasonable'," but cautioning that a fee request "should not result in a second major litigation."). Because the $25 voucher available as a component of the

Agreement here is treated as a "coupon,"[4] *Redman v. RadioShack Corp.*, — F.3d —, No. 14-1470, 2014 WL 4654477, at *11 (7th Cir. Sept. 19, 2014), CAFA's procedural restrictions on the award of attorneys fees also apply. *In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 5497275, at *5 (N.D. Ill. Oct. 3, 2013). Where, as here, a settlement offers a combination of voucher-based and prospective equitable relief, Sections 1712(b) and (c) provide for the use of a lodestar analysis in calculating attorneys' fees. *See* 28 U.S.C. § 1712(b)(1)–(2)-(c) (permitting calculation of fee "based upon the amount of time class counsel reasonably expended"); *In re Sw. Airlines*, 2013 WL 5497275, at *5 (employing lodestar analysis pursuant to 28 U.S.C. § 1712(b) or (c) in settlement providing vouchers and prospective relief); *see also* S. Rep. 109-14, at 30–31 (2005).

Further, although Rule 23(h) provides a procedural basis for the award of attorneys' fees in the context of a class settlement, and CAFA contains a procedural restriction on the award of attorneys' fees in this case limiting them to those "based upon the amount of time class counsel reasonably expended," the analysis does not end there. Indeed, because federal jurisdiction in this case is premised on diversity, the Court must look to Illinois state substantive law to determine the amount of a reasonable attorneys' fee award in this case. *See* S. Rep. 109-14, at 49 ("[CAFA] does not change the application of the Erie Doctrine, which requires federal courts to apply the substantive law dictated by applicable choice-of-law principles in actions arising under diversity jurisdiction."); *id.* at 61 ("[C]lass action decisions rendered in federal court should be the same as if they were decided in state court—under the *Erie* doctrine, federal courts must

---

[4]     Despite this treatment, the voucher is distinct from a typical "coupon" in several critical respects. More than a discount, the voucher enables consumers to purchase a variety of products online without spending their own money. *See, e.g.*, Accessories, Motorola, http://www.motorola.com/us/shop-all-accessories-category/ (last visited Sept. 30, 2014); Clearance, Motorola, http://www.motorola.com/us/shop-all-clearance/ (last visited Sept. 30, 2014). In addition, the voucher is fully transferrable and may be sold, traded, or given away to other persons.

apply state substantive law in diversity cases."); *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012) (holding that state law governed determination of fees in class action in federal court on CAFA diversity jurisdiction because "the issue of attorneys' fees has long been considered for *Erie* purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees."); *Gonzalez v. S. Wine & Spirits of Am., Inc.*, 555 F. App'x 704 (9th Cir. 2014) ("Because the district court exercised diversity jurisdiction over this case, [state] substantive law applies to the calculation of the attorney fee award."); *see also Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir. 1987) ("In diversity cases, state law governs the granting of attorney's fees.").

Under Illinois law, the party seeking fees bears the burden of establishing their reasonableness. *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 929 N.E.2d 641, 651–52 (Ill. App. Ct. 2010) *aff'd*, 988 N.E.2d 75 (Ill. 2013) (citing *LaHood v. Couri*, 603 N.E.2d 1165 (Ill. App. Ct. 1992), *opinion modified* Dec. 4, 1992). Even where a contractual provision provides for the payment of attorneys' fees, the agreed-upon fees must still be reasonable. *Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424, 428 (Ill. App. Ct. 1987). Illinois courts employ a lodestar analysis assessing reasonableness of fees. *See id.* at 427. Under the lodestar method, "the starting point for calculating the amount of a reasonable attorney fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Watson v. S. Shore Nursing & Rehab. Ctr., LLC*, 965 N.E.2d 1200, 1213 (Ill. App. Ct. 2012) (citing *Hensley*, 461 U.S. at 433). The party seeking fees must submit detailed evidence specifying "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *LaHood*, 603 N.E.2d at 1170. Attorneys may calculate their fee request based on their normal hourly rates. *See Mt. Vernon Mem'l Estates, Inc. v. Wood*, 410 N.E.2d 995, 998 (Ill. App. Ct.

1980) ("The attorney's normal hourly billing rate will reflect the skill requisite to perform the legal service properly.") (citation and internal quotations omitted).

As detailed in the attached declaration of Benjamin H. Richman, Class Counsel's base lodestar is $360,199.50.[5] Class Counsel's current billing rates and the hours expended here are summarized in the chart on the following page:[6]

| ATTORNEY (POSITION) | YEARS OF EXPERIENCE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Jay Edelson (Managing Partner) | 18 | 25.9 | $685 | $17,741.50 |
| Rafey Balabanian (Partner) | 9 | 74.3 | $570 | $42,351.00 |
| Ben Richman (Partner) | 5 | 166.2 | $450 | $74,790.00 |
| Chris Dore (Partner) | 5 | 372.8 | $450 | $167,760.00 |
| Roger Perlstadt (Associate) | 11 | 30.3 | $515 | $15,604.50 |
| Courtney Booth (Associate) | 1 | 46.9 | $295 | $13,835.50 |
| Jack Yamin (Associate) | 1 | 16.6 | $295 | $4,897.00 |
| Law Clerks | N/A | 108 | $215 | $23,220.00 |
| TOTAL | | 841 | | $360,199.50 |

Class Counsel's base lodestar of $360,199.50 accurately reflects the time they spent investigating, researching, filing, and litigating Haught's and the Class's claims in both this Action and the California Action, as well as negotiating and finalizing the Agreement for the benefit of all Class Members. (*See* Section II, *supra.*)[7] The attorney and staff rates used to calculate

---

[5]     The hours listed have been adjusted for time that was deemed to be unnecessary or duplicative. (Richman Decl. ¶ 22.)

[6]     As with their negotiations before Judge Kim, Class Counsel would of course be willing to make their detailed time records—i.e., broken down by attorney, date, task and time expended—available to the Court for *in-camera* review.

[7]     Additionally, Class Counsel advanced $2,026.00 in unreimbursed litigation expenses. (Richman Decl. ¶ 18.) Notwithstanding, Class Counsel does not seek any reimbursement for such expenses outside of the requested attorneys' fee award.

Class Counsel's base lodestar are comparable to those charged by attorneys with equivalent experience, skill, and reputation for similar services in the Chicago legal markets, as well as other comparable markets throughout the country, and they have previously been approved by courts in this District, this Circuit, and nationwide. (Richman Decl. ¶ 20.) Additionally, the hourly rates used to calculate Class Counsel's lodestar are the same as those charged to Class Counsel's hourly-paying clients, which supports a finding that their fee request is reasonable. (*Id.* ¶ 21.) As such, there should be no question that Counsel's base lodestar is both fair and reasonable.

### B. The Requested Attorneys' Fee Award is Reasonable in Light of the Factors Considered in Assessing Such Awards.

In addition to determining whether the base lodestar is reasonable—it is in this case—Illinois courts typically consider several other factors to determine whether the base lodestar should be adjusted, including (1) the nature of the case, (2) the novelty or difficulty of the issues and the work involved, (3) the skill and standing of the attorneys, (4) the degree of responsibility required, (5) the usual and customary charges for similar services, (6) the benefit to the client, and (7) the connection between the litigation and the fees charged.[8] *Kaiser*, 518 N.E.2d at 428; *see also Watson*, 965 N.E.2d 1213 (citing *Hensley*, 461 U.S. at 434). Based on these factors, a court may make an upward or downward adjustment of the base lodestar. *Watson*, 965 N.E.2d at 1213.[9]

Five factors are particularly salient here. First, the amount of work involved in this case was significant. Class Counsel logged over eight hundred hours working towards the Agreement, beginning with the California Action, moving through motion practice and discovery in this

---

[8]     These factors parallel those used to adjust lodestar amounts when federal law applies. *See De La Riva v. Houlihan Smith & Co.*, No. 10-cv-8206, 2013 WL 5348323, at *1 (N.D. Ill. Sept. 24, 2013); *Hensley*, 461 U.S. at 429 n.3.

[9]     Here, Class Counsel do not seek any upward adjustment—in fact, they propose a downward adjustment—in this case, because their base lodestar of $360,199.50 is higher than the agreed-upon fee award of $350,000.

11

Action, and building up to extensive settlement negotiations conducted, in part, under Judge

Kim's oversight. Class Counsel participated in numerous settlement conferences—on May 2nd,

June 4th, July 2nd, July 15th, July 31st, and September 4th, among other meetings—to obtain an

accurate list of Class Members and resolve additional issues relating to the Settlement, including

the issue of fees. The amount of work involved in reaching the Agreement—which places the

agreed-upon fee award of $350,000 in close proximity to (but still below) Class Counsel's base

lodestar—supports the requested fee award's reasonableness.

Second, Class Counsel are well-respected members of the legal community, with

significant skill and experience in complex, class action litigation, particularly in the consumer

fraud arena. (*See* Firm Resume of Edelson PC, a true and accurate copy of which is attached to

the Richman Declaration as Exhibit 2-A.) They have frequently been appointed lead class

counsel by courts throughout the country in consumer fraud cases similar to this one. (*Id.*) In

short, Class Counsel's skill and experience in the consumer fraud realm also support the

reasonableness of a $350,000 fee award.

Third, Class Counsel's hourly rates are comparable to those charged for similar work in

the Chicago area. Further, the attorney rates listed in the table above are the same as the rates

Class Counsel charges to their hourly clients. (Richman Decl. ¶ 21.) They are also comparable

to—and in many cases, less than—those charged by similarly experienced attorneys. (*Id.* ¶ 20.)

*See In re Trans Union Corp. Privacy Litig.*, No. MDL 1350, 2009 WL 4799954, at *20 (N.D. Ill.

Dec. 9, 2009) (approving $550–$575 per hour Chicago 2010 market rates as "in the ballpark of

reasonableness" for partners litigating class actions), *order modified and remanded*, 629 F.3d

741 (7th Cir. 2011).

Further, Class Counsel's rates have been approved as reasonable by both Illinois state

courts and federal courts throughout the country in the context of consumer class action settlements. *See, e.g.*, *Woodman v. ADP Dealer Servs., et al*., No. 2013 CH 10169, ¶ 17 (Cir. Ct. Cook Cnty., Ill. Nov. 4, 2013) (Cohen, J.)[10] (granting Edelson PC's fee request in full, the reasonableness of which was demonstrated under the lodestar method); *Theis v. AVG Technologies USA*, Inc., 1:12-cv-10920-RGS, Dkt. 116 at 5–6 (D. Mass. May 5, 2014)[11] (same); *Kulesa v. PC Cleaner*, No. 12-cv-00725, Dkt. 101 at 16–17 (C.D. Cal. Aug. 26, 2014)[12]; *Atanasov v. GoLive! Mobile, LLC, et al.*, No. 2013-CH-08460 (Cir. Ct. Cook Cnty. Feb. 18, 2014).[13] The fact that Class Counsel's hourly rates have been approved by courts in similar cases, and that they closely mirror the rates of similarly experienced attorneys performing comparable work, further supports the reasonableness of a $350,000 fee award in this case.

Fourth, Class Counsel have obtained an excellent benefit for the Class—securing both $25 redemption codes and prospective relief that will keep Motorola customers better informed about when updates to their mobile devices will be released. The $25 redemption codes constitute real and immediate relief, and can be spent the same as cash in the Motorola Online Store, where Class Members can purchase a wide variety of mobile products and accessories. (Agreement § 2.1.) The codes are also fully transferrable and can be traded, sold, or given to other persons. (*See id.*) Nevertheless, Class Counsel recognize that certain limitations have been placed on the relief. The $25 amount must be spent at the Motorola Online Store, and redemption codes expire 120 days after their issuance. (*Id.*) Cognizant of these conditions, Class Counsel

---

[10]     A true and accurate copy of the order granting Class Counsel's fee award in *Woodman* is attached to the Richman Declaration as Exhibit 2-B.
[11]     A true and accurate copy of the order granting Class Counsel's fee award in *Theis* is attached to the Richman Declaration as Exhibit 2-C.
[12]     A true and accurate copy of the order granting Class Counsel's fee award in *Kulesa* is attached to the Richman Declaration as Exhibit 2-D.
[13]     A true and accurate copy of the order granting Class Counsel's fee award in *Atanasov* is attached to the Richman Declaration as Exhibit 2-E.

believe that the agreed-upon fee award is the best reflection of the value of the benefit to the Class, and they do not seek a multiplier that would result in an upward adjustment. *See Langendorf v. Irving Trust Co.*, 614 N.E.2d 23, 30 (Ill. App. Ct. 1992) *abrogated on other grounds by Brundidge v. Glendale Fed. Bank, F.S.B.*, 168 659 N.E.2d 909 (Ill. 1995). Given the benefit to the Class, and the fact that Class Counsel seek no upward adjustment—in fact, the requested fee award represents a downward adjustment of their base lodestar—the reasonableness of the requested fee award is evident.

Finally, and in light of the above, the connection between the litigation and the requested fee award is strong. A $350,000 fee award—which aligns with and is below Class Counsel's base lodestar—reflects the time spent prosecuting the claims in this litigation, the skill and standing of the attorneys who pursued it, the fees that would be charged for similar work, and the benefits to the Class. As a result, the requested fee award of $350,000 is reasonable and merits approval.

## IV. THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD.

Additionally, given his instrumental role in securing the relief now available to the Class, the Court should also approve the agreed upon incentive award of $2,000 to Plaintiff Haught as Class Representative. (Agreement §§ 8.3–8.4.) Incentive awards are common and serve to encourage the filing of beneficial litigation. *GMAC Mortg. Corp. of Pa. v. Stapleton*, 603 N.E.2d 767, 776 (Ill. App. Ct. 1992); *see, e.g.*, *Coy v. CCN Managed Care, Inc.*, 2011 IL App (5th) 100068-U ¶ 11 (Aug. 23, 2011) (affirming incentive awards to class representatives of $5,000 each).

Without any expectation that he might recover such an award, or anything at all, Plaintiff Haught devoted his own time and effort to pursuing claims on behalf of the Class, and otherwise

exhibited a willingness to participate in and undertake the responsibilities and risks attendant with bringing such an action. (Richman Decl. ¶¶ 25, 27; *see also* Declaration of Jack Haught ("Haught Decl.") ¶¶ 5–13, a true and accurate copy of which is attached as Exhibit 3.) At all times, he willingly assisted Class Counsel with the investigation of his claims and provided them with valuable information regarding his purchase, use, and experiences with his CLIQ XT device. (Richman Decl. ¶¶ 28–29; Haught Decl. ¶¶ 7, 9–13.) He also consulted with Class Counsel on multiple occasions over the phone and by email, and reviewed numerous pages of documents, including filings and settlement papers, among others. (Richman Decl. ¶ 30; Haught Decl. ¶¶ 7, 9–10, 12–13.) His extensive involvement was ultimately instrumental in reaching the Settlement with Motorola and obtaining the relief now available to the Class. (Richman Decl. ¶¶ 31–33.) As such, the agreed-upon incentive award of $2,000 is reasonable to compensate him for his efforts and encourage others do to the same in future cases. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1308 (2006) (finding median incentive award per class member to be over $4,000); *see also Ryan v. City of Chicago*, 654 N.E.2d 483, 486 (Ill. App. Ct. 1995) (noting trial court had awarded $10,000 incentive awards to each of two plaintiffs).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff Jack Haught, individually and on behalf of the Class, respectfully requests that the Court (1) approve an award of $350,000 in attorneys' fees and expenses to Class Counsel, (2) approve an incentive award of $2,000 to Plaintiff Haught in recognition of his efforts on behalf of the Class, and (3) provide such other and further relief as the Court deems reasonable and just.

*            *            *

15

Respectfully submitted,

**JACK HAUGHT,** individually and on behalf of a class of similarly situated individuals,

Dated: October 3, 2014

By: /s/ Benjamin H. Richman
     One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

16

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, certify that on October 3, 2014 I served the above and foregoing ***Plaintiff's Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Expenses, and Incentive Award*** by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system.

/s/ Benjamin H. Richman