## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JACK HAUGHT, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:12-cv-02515 |
| *v.* | Honorable Virginia M. Kendall |
| MOTOROLA MOBILITY, INC., a Delaware corporation, | |
| *Defendant.* | |

**PLAINTIFF HAUGHT'S MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................... 2

III. TERMS OF THE SETTLEMENT ................................................................................ 4

    A. Settlement Class ................................................................................................. 4

    B. Monetary Relief .................................................................................................. 4

    C. Injunctive Relief ................................................................................................. 4

    D. Additional Terms ............................................................................................... 4

        *1. Payment of Notice and Administration Expenses* ............................................ 4

        *2. Payment of Incentive Award and Attorneys' Fees and Expenses* .................. 5

        *3. Release* ............................................................................................................ 5

IV. CLASS MEMBERS HAVE BEEN PROVIDED SUFFICIENT NOTICE OF THE ACTION AND THE SETTLEMENT ........................................................................... 5

V. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE AND ADEQUATE, AND THUS WARRANTS FINAL APPROVAL ........................... 7

    A. The Strength of Plaintiff's Case Compared to the Amount Offered in Settlement Weighs in Favor of Final Approval ....................................................... 8

    B. The Likely Complexity, Length and Expense of Continued Litigation Absent Settlement Weighs in Favor of Final Approval ..................................................... 10

    C. The Lack of Opposition to the Settlement Weighs in Favor of Final Approval ............................................................................................................. 11

    D. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval ....................................................................... 12

    E. The Stage of Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval .......................................................................................... 13

VI. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**United States Court of Appeals Cases**

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) .....................12, 13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...................................9

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987)..............13

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ..................................7, 10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).................*passim*

**United States District Court Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07-cv-2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012).........................................11

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................10–11

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................11, 13

*In re Sw. Airlines Voucher Litig.*,
  No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ..................................9, 13

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  No. 97-cv-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).........................................12

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011).............................7, 10, 12, 13

*Wood v. Motorola Mobility, Inc.*,

  No. 4:11-cv-04409, 2012 WL 892166 (N.D. Cal. Mar. 14, 2012) ..................................2

**Statutory Provisions**

28 U.S.C. § 1712(e) ................................................................................7

Fed. R. Civ. P. 23................................................................................2, 5, 7

**Other Authorities**

Bonnie Cha, *Motorola Cliq XT – Silver (T-Mobile) Review*, CNET (Mar. 10, 2010),
  http://www.cnet.com/products/Motorola-cliq-xt-silver-t-mobile/ ..................................8

Jennifer Pate Offenberg, *Markets: Gift Cards*, 21 J. of Econ. Persp., No. 2, 2007 ....................10

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist
    and Plain Language Guide* (2010) ................................................................................5

I.      INTRODUCTION

The Settlement of this class action lawsuit resolves claims against Motorola arising out of its alleged failure to provide upgrades of the Android operating system running on its CLIQ XT mobile phones.[1] After more than two and a half years of hard-fought and contentious litigation in both California and Illinois, as well as many months of protracted negotiations and settlement conferences, the Parties were able—with the invaluable assistance of Magistrate Judge Young B. Kim—to reach a settlement that provides beneficial monetary and prospective relief to the Class.

On July 3, 2014, this Court preliminarily approved the Settlement and thereafter, notice of the action and proposed Settlement was disseminated to the Settlement Class. The time for filing objections and requesting to be excluded from the Class has now passed, and the reaction to the Settlement has been overwhelmingly positive: no Class Members have objected to the Settlement, and only four (out of more than 130,000) have opted out. The lack of opposition to the Settlement is not surprising given the excellent results it achieves for the Class, especially when balanced against the expected value of continued litigation.

Indeed, under the Settlement, Motorola has agreed to provide purchasers of CLIQ XT handsets with unique redemption codes worth $25 each for use at Motorola's Online Store. The codes are fully transferrable and there is no limit on the total number of redemption codes that Motorola will provide to the Class. In addition, in order to avoid the sorts of issues that led to the claims here, Motorola will conspicuously display on its upgrade website an agreed-upon disclaimer about software upgrades, as well as include a link to that webpage in any press release announcing an upgrade.

---

[1]     A copy of the Parties' proposed Class Action Settlement Agreement (the "Settlement Agreement" or "Agreement") is attached as Exhibit 1. Except as otherwise stated, all defined terms used herein shall have the same meaning ascribed to them in the Settlement Agreement.

1

For these reasons and as discussed more fully below, the Settlement is fair, reasonable, and adequate, and satisfies all the prerequisites for final approval under Rule 23. Consequently, the Court can (and should) appropriately grant final approval to the Settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

In June 2010, Haught purchased a Motorola CLIQ XT mobile phone. (Dkt. 1 ¶ 35.) Despite being a brand new device, the CLIQ XT utilized the already-outdated Android 1.5 operating system. (*Id*. ¶ 1.) Throughout 2010, Motorola made numerous representations that the CLIQ XT's operating system would be updated to Android 2.1, which were widely disseminated to the public through Motorola's website, its official online customer service forums, and its Twitter account. (*Id*. ¶ 2.) In deciding to purchase and keep his CLIQ XT phone, Haught saw and relied on these representations regarding the update. (*Id*. ¶ 39.) In February 2011, however, Motorola ultimately announced that the CLIQ XT's operating system would not be upgraded to Android 2.1. (*Id.* ¶ 37.) The failure to upgrade the CLIQ XT's operating system made it incompatible with many popular mobile applications, including various banking and travel applications used by Haught. (*Id*. ¶¶ 18–19, 44.)

Haught, on behalf of himself and a putative class of other CLIQ XT purchasers, filed suit against Motorola relating to the alleged misrepresentations. While he initially brought suit in California under California law, the court there found that he lacked standing to pursue such claims. *See Wood v. Motorola Mobility, Inc.*, No. 4:11-cv-04409, 2012 WL 892166, at *7 (N.D. Cal. Mar. 14, 2012). He subsequently filed the instant action here under Illinois law, which Motorola moved to dismiss. (Dkt. 15.) This Court denied that motion in part, allowing Haught's

---

[2] Some of the underlying facts regarding Motorola's conduct with respect to its sale and marketing of the CLIQ XT and operating system upgrades are disputed. (*See, e.g.*, dkt. 29.) To the extent any such underlying facts are disputed, the facts provided here are those that Haught alleges in his operative Complaint. (Dkt. 1.)

claims for fraud and unjust enrichment to proceed. (Dkt. 26.)

Following the Court's ruling on the motion to dismiss, Motorola answered the complaint, denying the substance of Haught's allegations and asserting numerous affirmative defenses. (Dkt. 29.) Formal discovery ensued, and the Parties served and responded to one another's written discovery requests. (*See* Declaration of Benjamin H. Richman ¶ 3, attached as Exhibit 2.) Thereafter, the Parties began discussing the potential for resolving the case without the need for protracted litigation. (*Id*. ¶ 4.) This led to a joint motion to stay the proceedings pending continued settlement negotiations, which the Court granted in December 2012. (Dkt. 32.)

The stay marked the beginning of a period of extensive settlement negotiations that would ultimately span almost an entire year. Early discussions failed to produce a complete agreement, and settlement proceedings were referred to Magistrate Judge Young B. Kim in March 2013. (Dkt. 37.) With Judge Kim's assistance over the next several months, along with additional information about the identity of the Class Members obtained during that time from third-party T-Mobile USA, Inc. ("T-Mobile"), the cellular service provider servicing the CLIQ XT mobile phones, the Parties were eventually able to reach and finalize the Settlement Agreement now before the Court. (Richman Decl. ¶ 5.)

On July 3rd, the Court certified the proposed Settlement Class of CLIQ XT purchasers for settlement purposes, granted preliminary approval to the Settlement, and directed that notice of the case and Settlement be disseminated to members of the Class. (Dkt. 77.) The deadline for Class Members to opt out of or comment upon the Settlement has now passed, with only a handful of opt-outs and no objections. (*See* Declaration of Shawn Schneider ¶¶ 20–22, attached as Exhibit 3.) The Parties and Settlement Administrator have fully complied with the Court's Preliminary Approval Order and now seek final approval of the Settlement.

**III. TERMS OF THE SETTLEMENT**

The terms of the Settlement are set forth fully in the Settlement Agreement and are briefly summarized below:

**A. Settlement Class**: This Court, in its Preliminary Approval Order, certified the following class for settlement purposes (the "Settlement Class"):

> All Persons and entities in the United States who purchased a Motorola CLIQ XT prior to February 2, 2011.

(Dkt. 77 ¶ 3.)

**B. Monetary Relief**: Each member of the Settlement Class who submits a valid Claim Form will receive a unique redemption code for $25 to spend at the Motorola online store. (Agreement § 2.1.) The redemption codes are fully transferable, and there is no cap on the total number of redemption codes that Motorola will provide to the Settlement Class. (*See id*.)

**C. Injunctive Relief**: Should Motorola continue to operate an upgrade page on its website, it will (for a period no less than eighteen months) include on any such page a clear and conspicuous disclaimer that the information contained on the page is not a commitment or obligation to deliver any particular product, feature, software upgrade, or functionality. (Agreement § 2.2(a).) Motorola will also include a hyperlink to any such upgrade page in any official press release whose primary purpose is to announce the public availability of an upgrade on a Motorola mobile device. (*Id.* § 2.2(d).)

**D. Additional Terms**: In addition to the monetary and injunctive relief described above, the Parties have agreed to the following settlement terms:

*1. Payment of Notice and Administration Expenses*: Motorola has paid and will continue to pay all costs associated with disseminating notice to the Settlement Class and administration of the Settlement. (Agreement § 4.5.)

2. *Payment of Incentive Award and Attorneys' Fees and Expenses*: Motorola has agreed to pay an incentive award of $2,000 to Plaintiff Haught in recognition of his efforts on behalf of the Settlement Class and up to $350,000 in reasonable attorneys' fees and expenses. (Agreement §§ 8.1, 8.3.) Both the incentive award and the fee award are subject to the Court's approval, and Plaintiff has petitioned the Court separately for approval of these awards. (Dkts. 79–80.)

3. *Release*: In exchange for the relief described above, Motorola will receive a full release from all claims asserted in this action. (Agreement §§ 1.30–1.32, 3.1–3.3.)

## IV. CLASS MEMBERS HAVE BEEN PROVIDED SUFFICIENT NOTICE OF THE ACTION AND THE SETTLEMENT.

Following preliminary approval and certification of a class for settlement purposes, Rule 23 requires a district court to direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' rights to exclude themselves from the class, among other things. *Id*. Providing notice to more than 70% of class members is generally considered reasonable and sufficient to satisfy due process. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf. (suggesting that a notice plan that reaches 70% of class members is reasonable).

In this case, the Court-approved Notice Plan called for direct notice by U.S. mail to members of the Settlement Class, as well as internet publication notice. (Dkt. 77 ¶ 9; Agreement §§ 4.2–4.3.) The content of the notices used simple, plain language to encourage readership and

comprehension. (*See* Agreement Exs. B, D.) Not surprisingly then, in approving the Notice Plan, the Court expressly found that it "fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto." (Dkt. 77 ¶ 9.) The Court also appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator to effectuate the Notice Plan. (*Id.* ¶ 7.)

Epiq and the Parties have since diligently executed the Notice Plan and successfully delivered notice to nearly every Class Member. First, the Parties provided Epiq with a list of all CLIQ XT purchasers.[3] The list contained 130,184 unique names and U.S. mailing addresses. (Schneider Decl. ¶ 4.)[4] On August 11, 2014, following application of industry standard address verification methods to the list, Epiq sent by USPS First Class Mail a copy of the Court-approved Postcard Notice. (Schneider Decl. ¶ 6.) While some of the notices were returned as undeliverable, ultimately 125,390 (or 96%) were successfully delivered. (*See* Schneider Decl. ¶¶ 4, 8–9.)

Also pursuant to the Court-approved Notice Plan, Epiq created a case-specific Settlement Website, www.cliqxtsettlement.com, which went live on July 17, 2014 and has remained so since. (*Id.* ¶ 12.) The Settlement Website contains information about the case and the Settlement, the Court-approved internet notice, answers to frequently asked questions, the Motion for Attorneys' Fees and Incentive Award and other case documents, and a toll-free telephone number that Settlement Class Members can call for additional information twenty-four hours per

---

[3] The list of CLIQ XT purchasers was obtained from T-Mobile, which was the only cellular network serving that device. (Richman Decl. ¶ 6.)
[4] The list originally contained 145,001 names, but Epiq removed duplicate entries, resulting in the list of 130,184. (Schneider Decl. ¶ 4.)

day, seven days per week. (*Id.* ¶¶ 12, 16.) The Settlement Website also allows Class Members to submit electronic Claim Forms online. (*Id.* ¶ 12.)[5]

Given that Epiq fully implemented the Court-approved Notice Plan and over 96% of the Settlement Class received direct notice of the Settlement, it is clear that Rule 23's notice requirements and due process have been satisfied. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595–96 (N.D. Ill. 2011) (finding notice sufficient where professional settlement administrator provided direct notice to 89.7% of the class, created a settlement website, and maintained a toll-free number that class members could call). For these reasons and as explained further below, the Court should grant final approval to the Settlement.

## V. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE AND ADEQUATE, AND THUS WARRANTS FINAL APPROVAL.

Under Rule 23, this Court may approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Class Action Fairness Act similarly requires that, "[i]n a proposed settlement[, such as this,] under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e) ("CAFA").[6]

In determining whether a settlement is fair, reasonable, and adequate, courts must consider (1) the strength of the plaintiff's case compared to the amount of the defendant's settlement offer; (2) the likely complexity, length, and expense of continued litigation; (3) the

---

[5] Both the Settlement Website address and the toll-free telephone number were included on the Postcard Notice mailed to the Settlement Class. (Schneider Decl., Ex. 1.)

[6] While Plaintiff's Motion for Preliminary Settlement Approval suggested that the $25 redemption codes here were not "coupons" for purposes of CAFA (*see* dkt. 73), that motion was filed prior to the Seventh Circuit's decision in *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014). Following that opinion, Plaintiff acknowledged in his Motion for Approval of Attorneys' Fees, Expenses, and Incentive Award that the Seventh Circuit would likely consider the redemption codes here coupons for purposes of CAFA. (Dkt. 79 at 7–8.)

7

amount of opposition to the settlement by affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The Parties' proposed Settlement easily satisfies these factors, and thus warrants final approval.

### A. The Strength of Plaintiff's Case Compared to the Amount Offered in Settlement Weighs in Favor of Final Approval.

The first *Synfuel* factor—the strength of the plaintiff's case compared to the amount of the defendant's settlement offer—is "[t]he most important factor relevant to the fairness of a class action settlement." *Synfuel*, 463 F.3d at 653 (internal quotations omitted). In conducting this analysis, "the district court should begin by quantifying the net expected value of continued litigation to the class." *Id*. (internal quotations omitted). The Seventh Circuit has recognized that "a high degree of precision cannot be expected in valuing a litigation," but that a district court should "at least come up with a ballpark valuation." *Id.* (internal quotations omitted).

Here, the $25 value that Settlement Class Members can receive under the Agreement sufficiently approximates what they would likely recover if they were to prevail at trial. Indeed, even assuming a complete victory on the merits, no Class Member would be entitled to recover more than the price she paid for her CLIQ XT phone, the full retail purchase price of which was between $100 to $150. (Dkt. 1 ¶ 35; *see also* Bonnie Cha, *Motorola Cliq XT – Silver (T-Mobile) Review*, CNET (Mar. 10, 2010), http://www.cnet.com/products/Motorola-cliq-xt-silver-t-mobile/.) That said, the expected value of continued litigation is far less than that for two reasons.

First, while the CLIQ XT phones Settlement Class Members purchased had outdated operating software and were thus likely not worth the full purchase price paid, they still functioned in many respects even though they had limited smartphone functionality with certain

8

applications. Consequently, any recovery at trial would be the difference between the value of the phones that Class Members actually received (with an outdated operating system) and the value of the phones that Class Members expected to receive (running an updated version of the Android operating system). That amount is something less than the $100 – $150 retail purchase price and would be the subject of debate between the Parties (and likely, their respective experts). Notwithstanding, based upon their own analysis of the claims and facts at issue here, Plaintiff and Class Counsel are confident that $25 is a fair approximation of the amount individual Class Members have been damaged and could reasonably expect to recover at trial. (Richman Decl. ¶ 8.)

Second, a complete victory at trial is far from certain. Motorola denies making several of the alleged representations at issue, (Dkt. 29 ¶¶ 21, 36, 38), and has asserted numerous affirmative defenses, including estoppel, limitations periods, and failure to mitigate damages, (*Id*. at 17–18). Further, Motorola also disputed that the claims at issue are appropriate for class certification. (*Id.* ¶¶ 46–52.) Of course, if Motorola is correct and the litigation continued without a class being certified, it is unlikely that CLIQ XT purchasers would recover *anything*, because they would have little incentive to file individual suits to recover $25 apiece. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis omitted); *see also In re Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

Balanced against this potential recovery after continued litigation is the actual "bird-in-hand" recovery available through the Parties' Settlement. In addition to significant prospective

relief, the Agreement provides each Settlement Class Member with a $25, fully transferable redemption code for the Motorola Online Store. And while the Seventh Circuit has implied that such vouchers are only worth about 60% of their face value to class members, *see Redman*, 768 F.3d at 632 (treating $830,000 coupon settlement as worth $500,000 to class), at least one academic study has found their worth to be a minimum of 80% of face value. *See* Jennifer Pate Offenberg, *Markets: Gift Cards*, 21 J. of Econ. Persp., No. 2, 2007, at 233, *available at* http://pubs.aeaweb.org/doi/pdfplus/10.1257/jep.21.2.227 ("Taking the sales price and the selling costs together, a fair estimate would be that gift cards have a cash value 20 percent lower than their face value to recipients. . . .").[7] In either case, this suggests that the $25 redemption codes here are worth no less than $15 to $20 *in cash* to each Class Member, which represents between 10% and 20% of the total purchase price of $100 to $150 for the phones and approaches a full recovery given what Class Members could actually expect to recover at trial. This level of recovery is well within the range of other settlements previously approved by courts in the Seventh Circuit. *See, e.g.*, *Schulte*, 805 F. Supp. 2d at 583–84 (collecting cases and approving settlement representing 10% of maximum potential recovery, and noting that "[n]umerous courts have approved settlements with recoveries around (or below) this percentage").

Accordingly, the first—and most important—*Synfuel* factor weighs in favor of final approval of the Settlement.

### B. The Likely Complexity, Length and Expense of Continued Litigation Absent Settlement Weighs in Favor of Final Approval.

The second *Synfuel* factor—the likely complexity, length, and expense of continued litigation—also supports final approval of the Settlement. As noted above, Motorola denied making several of the representations at issue, asserted numerous affirmative defenses, and

---

[7] Professor Offenberg's study was based on research she conducted into the secondary market for gift cards. Offenberg, *supra*, at 232. Like gift cards, the redemption codes here are fully transferable.

10

disputed that the Class's claims are appropriate for class certification. In light of these positions taken by Motorola, it is virtually certain that the complexity, length, and expense of continued litigation would be substantial. If the Settlement is not approved, discovery will resume and witnesses and evidence from across the country will need to be marshaled by both sides as they prepare to present their respective cases for class certification, summary judgment, and trial. (Richman Decl. ¶ 9.) In addition, any decision on class certification, ruling on dispositive motions, or judgment at trial would assuredly be appealed by the losing party, further increasing the cost and delay to obtaining ultimate recovery for the class. (*Id.*) Consequently, this factor weighs in favor of final approval as well.

### C. The Lack of Opposition to the Settlement Weighs in Favor of Final Approval.

The third *Synfuel* factor—the amount of opposition to the settlement by affected parties—likewise favors approval of the Settlement here. As in this case, lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012).

Here, despite direct notice reaching over 96% of the Settlement Class, none of the more than 130,000 Class Members objected to the Settlement in any respect, and only four have opted out. (Schneider Decl. ¶¶ 20, 22.) Ultimately, the fact that just .003% of the Settlement Class chose to exclude themselves from the Settlement "is strong circumstantial evidence" favoring final approval here. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) ("99.9% of class members have neither opted out nor filed objections to the proposed settlements. This acceptance rate is strong circumstantial evidence in favor of the settlements."); *see also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964–65

(N.D. Ill. 2011) (finding that "it is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object," and that "[s]uch a remarkably low level of opposition supports the Settlement").

Accordingly, the third *Synfuel* factor strongly weighs in favor of final approval.

### D. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.

The fourth factor to consider—the opinion of competent counsel—also supports final approval of the Settlement. As the Seventh Circuit has noted, "[w]hile the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Indeed, where class counsel has "extensive experience in consumer class actions and complex litigation," their "belie[f] that the settlement is beneficial to the Class" supports approval of the settlement. *Schulte*, 805 F. Supp. 2d at 586–87; *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-cv-7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted").

Here, Class Counsel are well-respected members of the plaintiffs' bar with significant experience litigating and settling consumer technology class actions similar in size, scope, and complexity to this one. (Richman Decl. ¶ 10.) Based on that experience and their litigation of the instant action, Class Counsel believe that the claims at issue here are appropriate for settlement and that the monetary and prospective relief obtained through the Settlement is beneficial to the

Class, especially when weighed against the expected value of continued litigation. (*Id.*; *see also* Section V.A, *supra*.) Courts place "significant weight" on such opinions of counsel, *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020, and this factor thus strongly weighs in favor of granting final approval to the Settlement as well.

> E. **The Stage of Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.**

The final *Synfuel* factor considered—the stage of the proceedings and amount of discovery completed—also supports final approval here. This factor is relevant "because it determines 'how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'" *In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *8 (quoting *Armstrong*, 616 F.2d at 325).

Here, the Parties served and responded to written discovery, as well as engaged in the informal exchange of information at both the outset of the litigation and during the lengthy settlement negotiation process. (Richman Decl. ¶ 3.) In fact, Class Counsel insisted upon third-party discovery from T-Mobile before finalizing settlement negotiations. (*Id.* ¶ 6.) Further, class counsel has been investigating consumer complaints relating to the CLIQ XT's outdated operating system since 2010. (*Id.* ¶ 10.) All of those efforts ensured that the Parties had more than sufficient information about their respective litigation positions, and that Plaintiff and Class Counsel were able to effectively represent the Class's interests in negotiating the Settlement now before the Court. *See Schulte*, 805 F. Supp. 2d at 587–88. Indeed, "as the Seventh Circuit has suggested, the fact that Class Counsel negotiated a fair settlement is evidence that [they] had enough information to effectively represent the class." *Id.* (citing *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987)).

Accordingly, like the other four factors, the fifth *Synfuel* factor also weighs in favor of

final approval of the Settlement.

## VI. CONCLUSION

Ultimately, because the Court-approved Notice Plan was effectively executed resulting in direct notice of the Settlement to over 96% of the Settlement Class, and because all five factors of the Seventh Circuit's *Synfuel* test weigh strongly in favor of final approval, Plaintiff Jack Haught, on his own behalf and on behalf of the Settlement Class, respectfully requests that the Court enter an Order (i) granting final approval to the Settlement, and (ii) providing such other and further relief as it deems reasonable and just.[8]

Respectfully submitted,

**JACK HAUGHT**, individually and on behalf of a class of similarly situated individuals,

Dated: October 31, 2014

By: /s/ Benjamin H. Richman
  One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

---

[8] A proposed final approval order shall be submitted to the Court's proposed order email upon the filing of this motion.

## **CERTIFICATE OF SERVICE**

I, Benjamin H. Richman, an attorney, hereby certify that on October 31, 2014, I served the above and foregoing, ***Plaintiff Haught's Memorandum in Support of Final Approval of Class Action Settlement***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 31st day of October 2014.

/s/ Benjamin H. Richman